IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

CURTIS MORTON                                                      PLAINTIFF

v.                                  CIVIL ACTION NO. 4:14-cv-00169-GHD-JMV

GRACE HEALTH AND
REHABILITATION OF GRENADA, LLC                             DEFENDANT

MEMORANDUM OPINION DENYING
DEFENDANT'S MOTION TO STAY PROCEEDINGS AND REMAND TO ARBITRATION

Presently before the Court is Defendant Grace Health and Rehabilitation of Grenada, LLC's motion to stay proceedings and remand to arbitration [16]. Upon due consideration, the Court finds that the motion should be denied.

On October 7, 2014, Plaintiff Curtis Morton ("Plaintiff") filed suit in the Circuit Court of Coahoma County, Mississippi against Defendant Grace Health and Rehabilitation of Grenada, LLC[1] ("Grace Health"), a nursing home, alleging negligent treatment and medical malpractice. Plaintiff alleges that his sister and primary caregiver, Courtney Barker-Brunt, checked Plaintiff out of Grace Health on or about January 15, 2013, due to alleged concerns for his health and well-being and took Plaintiff to Grenada Lake Medical Center, where Plaintiff was "diagnosed and treated for a number of health issues . . . caused by the actions, omissions and/or negligence of the employees at [Grace Health]" which resulted in unnecessary severe physical, mental, and emotional pain and suffering, as well as unnecessary medical treatment, test, and expense over a period of five days. Pl.'s State-Ct. Compl. [2] ¶¶ VII, IX–X.

Grace Health removed the case to this Court on the basis of diversity jurisdiction,

---

[1] Defendant maintains that its correct name is actually Grace Health & Rehab of Grenada, LLC.

1

maintaining that Plaintiff is a Mississippi citizen; Grace Health is a citizen of Delaware and Tennessee; and the amount in controversy, which Plaintiff pleads as $500,000.00, exceeds the sum of $75,000.00, exclusive of interest and costs. Grace Health also filed an answer [3] and an amended answer [4] to the complaint. Subsequently, on February 2, 2015, Grace Health filed the present motion to stay proceedings and remand to arbitration [16] pursuant to the Federal Arbitration Act (the "FAA") and in accordance with the subject arbitration agreement. Plaintiff has not filed a response to the motion, and the time for doing so has now passed. The matter is now ripe for review.

"The FAA provides that a 'written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' " *Marmet Health Care Ctr., Inc. v. Brown*, ––– U.S. –––, 132 S. Ct. 1201, 1203, 182 L. Ed. 2d 42 (Feb. 21, 2012) (quoting 9 U.S.C. § 2). It "requires courts to enforce the bargain of the parties to arbitrate," *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985), and "reflects an emphatic federal policy in favor of arbitral dispute resolution," *KPMG LLP v. Cocchi*, 565 U.S. –––, –––, 132 S. Ct. 23, 25, 181 L. Ed. 2d 323 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985) (internal quotation marks omitted)).

The Fifth Circuit has explained: "In determining whether parties should be compelled to arbitrate, courts perform a bifurcated inquiry. 'First, the court must determine whether the parties agreed to arbitrate the dispute. Once the court finds that the parties agreed to arbitrate, it must

consider whether any federal statute or policy renders the claims nonarbitrable.' " *Beverly Enters.-Miss. Inc. v. Powell*, 244 F. App'x 577, 579 (5th Cir. 2007) (per curiam) (quoting *Wash. Mut. Fin. Grp., LLC v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004)). "Generally, principles of state contract law govern the question of whether the parties formed a valid agreement to arbitrate." *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007) (citing *Bailey*, 364 F.3d at 264).

The first prong examines two considerations: (1) whether a valid arbitration agreement exists, and (2) whether the parties' dispute is within the scope of the arbitration agreement. *GGNSC Batesville, LLC v. Johnson*, 109 So. 3d 562, 565 (Miss. 2013) (citing *Adams Cmty. Care Ctr., LLC v. Reed*, 37 So. 3d 1155, 1158 (Miss. 2010)). Because this Court finds that no valid arbitration agreement exists, it need not reach the second consideration. The determination of whether a valid arbitration agreement exists is governed by the law of contracts, specifically, an examination of whether the elements of contract are present: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Id.* (citing *Reed*, 37 So. 3d at 1158) (internal quotation marks omitted).

Plaintiff was admitted to Grace Health on or about January 10, 2013. Pl.'s State-Ct. Compl. [2] ¶ IV. Upon admission, Plaintiff's sister, Courtney Barker-Brunt, apparently executed the subject arbitration agreement as his legal representative or designee. *See* Arbitration Agreement [16-1] at 1–6. The subject arbitration agreement, which is a part of the record, provides that it is between "the Resident or the Resident's Legal Representative or Designee signing on behalf of the Resident with proof, attached hereto, of the appropriate legal authority to

3

enter into a binding agreement on behalf of the Resident," as well as the "Facility," which "includes the particular facility where the resident resides, its parent, affiliates, and any subsidiary companies, owners, officers, shareholders, directors, medical directors, employees, management companies, administrators, rehabilitation company, successors, assigns, agents, attorneys, and insurers." *Id.* at 2. Grace Health maintains that Courtney Barker-Brunt was "agent of and personal and authorized representative of [Plaintiff]." Def.'s Mem. Br. Supp. Mot. Stay Proceedings & Remand Arb. [17] at 1. Grace Health attaches to its motion what it refers to as a "power of attorney"; however, the document is actually a power of attorney for health care and provides that Courtney Barker-Brunt is Plaintiff's agent to make health care decisions for Plaintiff. *See* Power of Attorney for Health Care [16-2] at 1.

Mississippi case law suggests that the person who signs a nursing home arbitration agreement must have actual authority to do so or the arbitration agreement will not be considered a valid contract. *See Cotton v. GGNSC Batesville, LLC*, No. 3:13-CV-00169-DMB-SAA, 2015 WL 1310034, at *5 (N.D. Miss. Mar. 24, 2015); *Gross v. GGNSC Southaven, LLC*, No. 3:14CV00037-M-A, 2015 WL 424437, at *3 (N.D. Miss. Feb. 3, 2015); *Grenada Living Ctr., LLC v. Coleman*, 961 So. 2d 33, 36 (N.D. Miss. 2007). An example of a document conferring actual authority is a power of attorney. Of great importance to this case is that the document attached to the subject arbitration agreement that purportedly confers actual authority on Courtney Barker-Brunt to sign the arbitration agreement is a power of attorney for health care. Although Mississippi state courts consider as part of the determination whether a power of attorney for health care is a part of the record, *see Reed*, 27 So. 3d at 1156, 1160, dispositive on this issue is whether the decision to sign the arbitration agreement was a health-care decision, and thus within

4

the scope of the power of attorney for health care, which is limited to health-care decisions. "[A] health-care decision is a decision made by an individual or the individual's agent . . . regarding the individual's health care, including: (i) Selection and discharge of health-care providers and institutions." *Id.* at 1159 (citing *Miss. Care Ctr. Of Greenville, LLC v. Hinyub*, 975 So. 2d 217, 218 (Miss. 2008)).

The subject arbitration agreement provides it is "not a condition of admission" and that "[t]he Resident may withdraw his or her consent to arbitrate the Resident's claim by notifying the Facility in writing within thirty days after the Resident's signing of the Agreement." Arbitration Agreement [16-1] at 1. Thus, the subject arbitration agreement was not "an essential part of the consideration for the receipt of health-care." *See Reed*, 37 So. 3d at 1159–1160 (citing *Hinyub*, 975 So. 2d at 218) (internal quotation marks omitted)). Therefore, the decision to sign the arbitration agreement was not a health-care decision and Grace Health's acceptance of the arbitration provision was not part of a health-care decision. *See id.* at 1158–1160; *see also Cook v. GGNSC Ripley, LLC*, 186 F. Supp. 2d 1166, 1170 (N.D. Miss. 2011) (citing *Hinyub*, 975 So. 2d at 218) ("[E]ven if the health care agent designation was valid, Adkins' admission to the facility was not contingent upon the signing of an arbitration agreement, as clearly stated in the terms. Thus, the arbitration agreement was not a health care decision as defined by Mississippi law and Cook did not have the authority to bind Adkins to arbitration based on this theory."). The power of attorney for health care did not give Courtney Barker-Brunt the authority to sign the arbitration agreement on Plaintiff's behalf and thus bind Plaintiff to the agreement. Grace Health has made no other argument in support of Courtney Barker-Brunt's purported authority to bind Plaintiff to the agreement. Accordingly, the Court finds that no valid agreement to arbitrate exists.

5

For the forgoing reasons, Defendant's motion to stay proceedings and remand to arbitration [16] is DENIED.

An order in accordance with this opinion shall issue this day.

THIS, the 7th day of May, 2015.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE